[Civ. No. 30085.   Second Dist., Div. Two.   Nov. 23, 1966.]

EVELYN H. DREYFUSS, Plaintiff and Respondent, v. MARTIN L. BURTON et al., Defendants and Appellants.

Harry B. Seelig and Sidney E. Baskin for Defendants and Appellants.

Richards, Watson & Hemmerling and Leo G. Ebben for Plaintiff and Respondent.

HERNDON, J.—Defendants appeal from the judgment entered against them following the granting of respondent's motion to strike appellants' answer and for summary judgment. As initially pleaded, respondent's cause of action was one seeking to collect upon a promissory note of which she alleged that she was a holder in due course. By their answer appellants alleged that respondent was neither a holder in due course nor an assignee for value of the note but merely a sham party created by the true owner of the note in an effort to avoid defenses and the assertion of a counterclaim or setoff existing against him. Therefore, appellants sought to assert their defenses and their counterclaim or setoff against respondent.

"Numerous decisions have discussed the law of summary judgments, and the rules relating thereto are well settled. ▌ The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. ▌ Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. ▌ The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. ▌▌ In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of

granting the motion should be resolved in favor of the party opposing the motion. ■ Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts. [Citations.] Thus, the trial court was justified in granting the motion here only if the declarations filed in support of it, strictly construed, contain facts sufficient to entitle the defendants to judgment, and those of the plaintiffs, liberally construed, show that there was no issue of fact to be tried.'' (*Stationers Corp.* v. *Dun & Bradstreet, Inc.*, 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

Applying these rules to the instant proceeding, the facts hereinafter recited have been established by appropriate construction of the affidavits of the parties in support of, and in opposition to, the respondent's motion.

In May or June of 1964, one Lawrence Herman and an associate leased three hotels from the corporate appellants together with the furniture, furnishings, fixtures and linens therein. These leases and agreements were signed by Herman and his associate in the name of a corporation then in the process of formation.

Among other items of property covered by the lease were linens of a value of $16,500. Some time in July or August of 1964 Herman wrongfully sold these linens to a third party, but this fact was not discovered by appellants until the hotels and their equipment were returned to them in January of 1965. In the same transaction wherein the hotels were leased appellants borrowed $25,000 from Herman and executed a promissory note in that amount. At Herman's direction his then attorney, Milton Miller, was named as the payee of this note as trustee for him. The note provided for repayment at the rate of $5,000 per month commencing September 1, 1964, and, although it did not so provide on its face, it was agreed that these payments actually were to be effected by reducing by $5,000 the monthly rental payments due appellants on the same dates. This agreement was adhered to until November 1, 1964, and therefore the amount remaining due after the November 1, 1964 deduction from the rentals was $10,000. Thereafter, however, the relationships between the parties apparently deteriorated rapidly.

On November 2, 1964, Herman's attorney, the named trustee-payee of the note, transferred it to Herman himself and on November 3, 1964, Herman transferred it to the Commonwealth Bank. The bank notified appellants in writing

that it had "discounted" the note and requested that further payments thereunder be made directly to it. Appellants advised the bank of the true agreement of the parties concerning the rental deductions and when Herman and his *alter ego* corporation defaulted on the December 1, 1964, rental payments, appellants refused to make the scheduled payment on the note. Thereafter, on December 28, 1964, the bank transferred the note to the respondent, who is Herman's sister and the wife of one of his attorneys, Gilbert Dreyfuss.

During November of 1964, appellants had filed some six law suits against Herman's dummy corporation. During this period Herman's attorney, Gilbert Dreyfuss, who, as indicated, is the husband of Herman's sister, the present respondent, informed appellants that on his advice "the entire matter would be relegated to the bankruptcy courts" which, in fact, occurred in November 1964.

On January 6, 1965, the several parties to these hotel lease-agreements attempted to settle their mutual differences by executing two "Mutual Releases".

These agreements provided that appellants would repay the note on a reduced and modified schedule and that in consideration thereof Herman and his corporation would return the hotels and their equipment to appellants as soon as they could regain them from the receiver then in possession. Except for these mutual future promises, and certain others not related to this proceeding, the parties to these agreements released each other of any and all claims and expressly waived their rights under section 1542 of the Civil Code relating to unknown claims.

It does not appear that appellants knew that the note in issue purportedly had been transferred to Herman's sister at the time these agreements were entered into, although concededly they had been notified of the earlier assignment to Commonwealth Bank. However, in addition to Herman's "guaranteeing" that the "holder" of the "assigned" note would take no legal action thereon if it were paid in accordance with the new schedule established in the release agreements, he orally stated to appellants and the several attorneys present at the time the agreements were executed "that the said note was his note and the agreement made that date in writing represented his agreement in connection with ownership and payment of said note."

When the hotels were returned to appellants, they discovered that Herman had breached his part of the agreement by

failing to return the linens valued at $16,500 which he theretofore had wrongfully sold to third persons. They now assert the right to set off this sum in the present action which they contend is actually one brought by Herman in his sister's name.

One initially viewing the affidavits filed by the parties in support of and in opposition to the instant motion might well gain the mistaken impression that the positions of the parties are reversed, i.e., that appellants were the moving parties and had succeeded in the court below. The affidavits filed by respondent in support of her motion are so extremely terse that in the factual context of the present case they amount to little more than bare assertions of the "ultimate facts" or conclusions which are disputed by appellants' claimed defenses and rights of setoff. Thus, respondent's own declaration consists entirely of the following paragraph:

"I am the plaintiff in the above action. On December 28, 1964, I purchased the note attached as Exhibit A to the Complaint herein for Ten Thousand Dollars ($10,000.00) cash from the Commonwealth Bank. I am the sole legal and beneficial owner of said note. No other person has a direct or indirect ownership interest therein." The entire content of the declaration of Lawrence Herman, respondent's brother, is as follows:

"On August 6, 1964, I loaned to the makers of the note which is attached as Exhibit A to the Complaint on file herein, the sum of Twenty-Five Thousand Dollars ($25,000.00). Said note was made payable to Milton Louis Miller, my attorney, as trustee for me, for collection purposes.

"Prior to November 2, 1964, the makers of the note paid to Mr. Miller as trustee the sum of Fifteen Thousand Dollars ($15,000.00) on account of the principal owing under said note and interest on said note through November 1, 1964.

"On November 2, 1964, the trust for collection purposes terminated and Mr. Miller transferred said note to me.

"On November 3, 1964, I transferred and assigned said note to Commonwealth Bank for the sum of Ten Thousand Dollars ($10,000.00). At no time since November 3, 1964, have I had any legal or beneficial ownership interest in said note."

The third declaration filed by respondent in support of her motion is that of L. E. McDowell. Its entire content reads as follows:

"I am an assistant Vice President of Commonwealth Bank. On November 3, 1964, Commonwealth Bank purchased from

Lawrence Herman for Ten Thousand Dollars ($10,000.00) cash a promissory note dated August 6, 1964, a full, true and correct copy of which is attached hereto and marked Exhibit 1 and made a part hereof.

"On November 3, 1964, the undersigned mailed to Martin Burton in his capacity as an officer of each corporation which is a maker of the note, and individually, a letter notifying the makers of the transferring of said note. Attached hereto marked Exhibit 2 and made a part hereof is a full, true and correct copy of said letter.

"On December 28, 1964, Commonwealth Bank sold said promissory note to Evelyn H. Dreyfuss for the sum of Ten Thousand Dollars ($10,000.00) cash."[1]

█ In opposition to the motion appellants filed a declaration which alleged that Herman at all times was "the real and actual owner of the promissory note" and that said Herman "used the names of other persons to hide his identity as said owner." In addition to other affirmance of ultimate facts sufficient to show the existence of triable issues, this declaration alleged in considerable detail numerous evidentiary facts disclosing the circumstances and the details of the transaction as above recited. It is self-evident that inferences favorable to appellants' position with respect to determinative issues reasonably could be drawn from the facts alleged in opposition to the motion.

█ The rule is well established that the movant's affidavits should set forth evidentiary and not ultimate facts whereas it is permitted to the party resisting the motion to state ultimate facts and, to some extent at least, conclusions. (*Scheble* v. *Nell,* 200 Cal.App.2d 435, 439 [19 Cal.Rptr. 375], and cases cited.) The reasons for these rules are particularly apparent in instances such as the present because if it were otherwise the movant's mere assertion of the disputed fact would deprive the resisting party of "the benefit of cross-examination, a trial by jury and opportunity to observe the demeanor of witnesses in giving their testimony, . . ." (*Eagle Oil & Refining Co.* v. *Prentice,* 19 Cal.2d 553, 556 [122 P.2d 264] ; *Richter* v. *United Calif. Theatres, Inc.,* 177 Cal. App.2d 126, 130 [1 Cal.Rptr. 895].)

---

[1] It may be noted that the letter of notification referred to in this declaration is rather inconsistent with the declaration in that it is stated therein that the bank "discounted" the note for Herman. To pay $10,000 cash for a note on which one seeks to collect a balance of $10,000 is at best a most unusual "discounting" procedure.

■ It is obvious that the true relationship between respondent and her brother with respect to the actual ownership of the note in issue is peculiarly within their own exclusive knowledge. Unless appellants were given the opportunity to cross-examine respondent and her brother, of necessity their proof would be limited to facts of the nature alleged in their affidavit in opposition to respondent's motion. The impropriety of this deprival of the right to cross-examine is enough, apart from other indicated reasons, to require reversal of the summary judgment.

It is to be noted, of course, that respondent's personal declaration does not contradict the facts alleged by appellants except insofar as it might be argued that a denial is inherent in her conclusions regarding her ownership of the note. Rather she contends that since appellants' affidavit does not indicate that they can testify of their own personal knowledge that she was acting for her brother when she obtained the note, they should not be permitted to go to trial on the issue wherein they would have the opportunity to establish these facts from her own lips. (Code Civ. Proc., § 2055.)

Starting with the assumption that she is a bona fide assignee for valuable consideration,[2] and that respondents should not be allowed to challenge this assumption by judicial trial thereof, respondent argues in support of the judgment entered that no setoff should be allowed against her. Her argument proceeds along the following lines:

If appellants' rights against her brother arose in January 1965, when he failed to return the linens to them as required by the terms of their agreements, then such rights could not be used as a setoff against her as a bona fide assignee for value since they arose after appellants had received notice of the assignment to the Commonwealth Bank in November. (Code Civ. Proc., § 368.)

On the other hand, respondent argues, if appellants' rights against her brother arose in July or August of 1964 when he wrongfully converted the linens, then they may not be set off against her as a bona fide assignee for value because by their release agreement appellants released her brother of any and all claims then existing against him including claims then unknown to the parties.

However, it is at once apparent that even accepting respondent's basic assumption that her status as a bona fide assignee for value may not be challenged, her reasoning still

---

[2]Respondent no longer contends she is a holder in due course.

remains patently fallacious. If appellants' right of setoff arose when her assignor converted the linen in July or August prior to any assignment having been made, no subsequent assignment could deprive them of their rights thereto. (Code Civ. Proc., § 368.) On the other hand, if she seeks to rely on appellants' waiver of this right after the assignment, then she is faced with the fact that such release was only a part of a bilateral agreement which her brother has breached.

However, any superficial plausibility these arguments might have disappears with the rejection of the erroneous assumption on which they are based. It would be difficult to imagine a case involving more factual questions requiring judicial determination than those presented in the instant proceeding. Respondent does not deny that at the time she allegedly purchased this note from the bank she knew either from her brother or his attorney, her husband, that it was in default and that appellants were refusing to pay the remaining installments thereof because they were to be paid solely by means of rental deductions which her brother, at her husband's advice, had frustrated by instituting the bankruptcy proceedings. Neither she nor her brother denies that at the time of the execution of the release agreements upon which she relies as constituting a release of the claim then existing against her brother and as a promise by appellants to pay the note in accordance with the new terms therein established, her brother asserted that he owned the note and had authority to dictate its new terms.

Neither does respondent nor her brother deny that at the time appellant executed the release agreements promising to pay the note according to its new terms, her brother knew that he would be unable to perform his obligations under the agreements to return appellants' merchandise to them because he theretofore had wrongfully converted it. Finally, neither respondent nor her brother expressly denies that it was moneys supplied by her brother, rather than her own, that were used to obtain a retransfer of the note from the Commonwealth Bank.

By the foregoing statements we do not intend to express any opinion as to the conclusions that should be drawn from the evidence which may be presented upon a trial of these several issues. ■ We merely indicate that accepting the appellants' factual allegations as true, as we must for the purpose of deciding the present appeal, there are vital issues of fact remaining to be resolved. Their resolution must follow a full presentation of the evidence, including the testimony which

may be elicited upon examination and cross-examination of the witnesses in the presence of the trier of the facts during a plenary trial which may not properly be foreclosed by the granting of a summary judgment.

If respondent is not a holder in due course of the note in issue, and if such note is merely a part of unexecuted bilateral agreements between appellants and her brother, her alleged cause of action would still remain subject to defenses, such as failure of consideration, arising out of the bilateral agreements, whether they arose before or after notice to appellants of the assignment of the note. As we noted in *Benson* v. *Andrews,* 138 Cal.App.2d 123, 136-137 [292 P.2d 39]:

"Plaintiff also contends that the Henrys had either actual or imputed notice of the assignment prior to the close of the escrow and may not now assert the defense of failure of consideration occurring after the assignment, especially since not until after the close of escrow did he first acquire knowledge of any claimed invalidity of the note and trust deed. The complete answer to plaintiff's contention appears in the following statement in *Bliss* v. *California Coop. Producers,* 30 Cal.2d 240, 250 [181 P.2d 369, 170 A.L.R. 1009]: 'Plaintiffs urge that the asserted failure of consideration did not occur until after appellants had notice of the transfer of their notes to plaintiffs and thus the failure of consideration is not a defense. The general rule is that an assignee of a chose in action is subject to all equities and defenses existing at or before the notice of the assignment. (Civ. Code, § 1459; Code Civ. Proc., § 368; 3 Cal.Jur. pp. 286-289.) But where there is a failure of consideration under a bilateral contract consisting of a breach by the assignor, such failure is a good defense to an action by the assignee whether it occurred before or after the notice of assignment. It is said: "On the other hand, payment to the assignor or other defenses acquired by the debtor against the assignor after notice of the assignment are invalid, *unless the defense, though acquired after notice, is based on a right of the defendant inherent in the contract by its terms. Thus if payments under an executory contract are assigned, the debtor may set up failure of the assignor to fulfill his part of the contract though such failure occurs after notice of the assignment,* for the assignor cannot give another a larger right than he has himself: . . ." [citation].' At page 251 the court continues: 'In the instant case, assuming that plaintiffs were not holders in due course because of notice of nonpayment of the installment, the avail-

ability of the defense here asserted is not dependent upon actual notice of equities in favor of appellants. ■ The general rule has been repeatedly stated that an assignee of a note who is not a holder in due course takes subject to all defenses that would be available against the assignor, one of such defenses being failure of consideration.' "

As a final argument respondent makes the frivolous contention that even if she is a mere trustee for her brother, who is the real party in interest in the present proceeding, nevertheless appellants' release of their claims against him and their promise to pay the note according to new terms should be construed as a waiver of their right to set off their losses caused by his breach of the terms of the very agreements wherein these releases and mutual promises were given and made. The mere statement of such contention suffices as its own refutation.

The judgment is reversed.

Roth, P. J., and Fleming, J., concurred.