The **RATH PACKING COMPANY, a corporation, Plaintiff and Counter-Defendant,**

v.

**M. H. BECKER** as Director of the County of Los Angeles Department of Weights and Measures, Defendant,

**C. B. Christensen** as Director of Agriculture of the State of California, Intervenor.

The **RATH PACKING COMPANY, a corporation, Plaintiff,**

v.

The **PEOPLE OF the STATE OF CALIFORNIA, Joseph W. Jones** as Director of the County of Riverside Department of Weights and Measures, Defendants.

**Civ. A. Nos. 72–607–R, 72–608–R.**

United States District Court,
C. D. California.

April 3, 1973.

---

3. See attachments to plaintiff's complaint.

Gibson, Dunn & Crutcher, Sherman Welpton, Jr., Dean C. Dunlavey, Los Angeles, Cal., for plaintiff.

John Maharg, County Counsel, Arnold K. Graham, Deputy County Counsel, Los Angeles, Cal., for M. H. Becker.

Ray T. Sullivan, Jr., County Counsel, Loyal E. Keir, Deputy County Counsel, Riverside, Cal., for Joseph W. Jones.

Evelle J. Younger, Atty. Gen. of Cal., Carl Boronkay, Asst. Atty. Gen., Herschel T. Elkins and Allan J. Goodman, Deputy Attys. Gen., for Intervenor C. B Christensen.

### MEMORANDUM OPINION AND ORDER

REAL, District Judge.

These matters have been consolidated for decision after trial of Case No. 72–607–R, and hearing of cross-motions for summary judgment in case No. 72–608–R. The facts of both cases have much commonality with little or no dispute of the facts necessary to disposition of both cases.

Plaintiff, The Rath Packing Company, (hereafter Rath), is a meat processor subject to inspection pursuant to the terms of the federal Wholesome Meat Act of 1967, 21 U.S.C. § 601 et seq.

Defendants M. H. Becker (hereafter Becker) and Joseph W. Jones (hereafter Jones) are Directors of County Department of Weights and Measures of Los Angeles and Riverside Counties respectively. C. B. Christensen, as Director of Agriculture of the State of California has heretofore been granted leave to intervene in the Becker action and has participated in presenting the defense in that action.

The controversy arises out of the actions of Becker and Jones through their respective deputies of ordering off-sale meat products delivered by Rath to retail stores found to be short of the weight stated on the label. Determination of short-weight has been made in each case by the application of the provision of Title 4, California Administrative Code, Chapter 8, subchapter 2, Article 5.

Fundamental to resolution of the validity of Becker and Jones' actions is a determination of the reach of the federal Wholesome Meat Act of 1967, 21 U.S. C. § 601 et seq., *i.e.*, preemption by the federal government of the regulation of meat and meat products.

The federal Wholesome Meat Act of 1967 was enacted by Congress with the finding that:

" . . . Unwholesome, adulterated, or misbranded meat or meat food products impair the effective regulation of meat and meat food products in interstate or foreign commerce, are injurious to the public welfare, destroy markets for wholesome, not adulterated, and properly labeled and packaged meat and meat food products, and result in sundry losses to livestock producers and processors of meat and meat food products, as well as injury to consumers." 21 U.S.C. § 602.

A reading of the statutory scheme together with the legislative history [1] demonstrates clearly, in the context of our concern here, that Congress intended to broaden federal regulation of meat and meat food products to cope with adulteration, unwholesomeness and misbranding for the welfare of consumers.

The essence of the controversy here is found in Congressional enactment of Title 21, United States Code, Section 601(n) which provides:

"(n) The term 'misbranded' shall apply to any . . . meat or meat food product under one or more of the following circumstances:

(5) if in a package or other container unless it bears a label showing . . . (B) an accurate statement of the quantity of the contents in terms of weight, measure or numerical count: Provided, That under Clause (B) of this subparagraph (5), reasonable variations may be permitted,

. . . by regulations prescribed by the Secretary."

Rath claims that it meets the criteria of 21 U.S.C. § 601(n)(5) when its products are considered under the application of regulations published by the Secretary of Agriculture in 9 C.F.R. § 316.1 et seq. and 21 U.S.C. § 607(b).

21 U.S.C. § 607(b) provides in its pertinent part:

"(b) All . . . meat and meat food products inspected at any establishment under the authority of this subchapter . . . shall at the time they leave the establishment bear, in distinctly legible form, directly thereon or on their containers . . . the information required under paragraph (n) of section 601 of this title."

Rath argues that section 607(b) limits the inquiry of accurate weight to the time meat or meat food products leave a processor's plant under federal inspection. Rath here argues for too much. To complete the regulatory scheme and maintain continuing enforcement, Congress gave federal meat inspectors the power of seizure of adulterated or misbranded meat or meat food products at any level of distribution. 21 U.S.C. § 673 makes clear that the provisions of section 601(n)(1–12) can be applied to packages of meat or meat food products at the ultimate end of a meat processor's distribution system —the retail store.

The defendants so argue—but they fall short in the recognition of what it is they are permitted to do by the federal Wholesome Meat Act of 1967. The provisions of 21 U.S.C. § 679 limit the state in clear and unequivocal language. Therein, the states are admonished that " . . . [M]arking, labeling, packaging or ingredient requirements in addition to, or different than, those made under this chapter may not be imposed by any State . . . with respect to

1. U.S.Code Congressional and Administrative News, 90th Congress, First Session, 1967, pages 2188–2213.

articles prepared at any establishment under inspection in accordance with the requirements under subchapter I of this chapter. . . ." Rath is clearly within these requirements.

Defendants defend their acts and rely —as the source of their authority and practice—upon state statutes. We now proceed to analyze that state statutory scheme to determine whether it meets the limitations of 21 U.S.C. § 678 when applied to the products of Rath.

Defendants cite as their primary source California Business and Professions Code section 12211 which provides in its pertinent part:

"§ 12211. Weighing or measuring commodities sold or being delivered; rules and regulations; off sale order; evidence. Each sealer shall . . . weigh or measure packages, containers or amounts of commodities sold, or in the process of delivery, in order to determine whether the same contain the quantity or amount represented. . . .

The director is hereby authorized and directed to adopt and promulgate necessary rules and regulations governing the procedures to be followed by sealers . . . in determining whether any package or container or a lot of such packages or containers complies with the provisions of this section.

\* \* \* \* \* \*

Whenever a lot or package of any commodity is found to contain . . . a less amount than that represented, the sealer shall in writing order same off sale. . . ."

Following the direction of the California legislature, the Director of Agriculture of the State of California has published in Title 4, California Administrative Code, Chapter 8, subchapter 2, Article 5 (hereafter Article 5) a comprehensive procedure for testing commodities to determine their compliance with California Business and Professions Code section 12211. In a detailed step by step process, the sealer is led to the determination of whether or not the commodities in question "contain a lesser amount than represented". The procedure is a statistical determination based upon normal and proven statistical standards. As such, the result can be no better than the objective, and the stated objective of Article 5 is to determine by sampling techniques the qualification of a lot of commodities to the requirements of section 12211, i.e., that the quantity represented on the label is what the package contains. These techniques are questioned by Rath as contravening the prohibition against adding to or differing from the labeling requirements of the federal Wholesome Meat Act of 1967. Defendants argue validity, urging that preemption by the federal government is limited by 21 U.S.C. § 678 when it provides:

". . ., but any State or Territory or the District of Columbia may, consistent with the requirements under this chapter, exercise concurrent jurisdiction with the Secretary over articles required to be inspected under said subchapter I, for the purpose of preventing distribution . . . of any such articles which are adulterated or misbranded and are outside of such an establishment. . . ."

It is clear in the provisions for concurrent jurisdiction outside an inspected plant that such actions as are undertaken by states in the regulation of meat and meat food products must be *consistent* with the requirements of the federal Wholesome Meat Act of 1967. That Act has spoken upon the subject of misbranding—and more particularly when misbranding is related to comparison of the label with contents as provided in 21 U.S.C. § 601(n)(5) in this language:

"(n) The term 'misbranded' shall apply to any . . . meat or meat food product . . .

\* \* \* \* \* \*

(5) if in a package or other container it bears a label showing . . . (B) an accurate statement of

quantity . . . . in terms of weight . . . .: Provided, That under clause (B) of this subparagraph (5) reasonable variations may be permitted . . . by regulations prescribed by the Secretary."

To implement subsection (5), the United States Secretary of Agriculture published rules and regulations in Title 9, Code of Federal Regulations. In section 317.2(h)(2) the Secretary provides:

"(2) The statement as it is shown on a label shall not be false or misleading and shall express an accurate statement of the quantity of contents of the container exclusive of wrappers and packing substances. Reasonable variations caused by loss or gain of moisture during the course of good distribution practices or by unavoidable deviations in good manufacturing practice will be recognized. Variations from stated quantity of contents shall not be unreasonably large."

California Article 5 just does not meet this federal standard. Nowhere in the measuring processes set forth therein in detail is any consideration given to the possible "loss . . . of moisture during the course of good distribution practice." The measure of Article 5 is "absolute" as determined by accepted statistical methods and, as such, erroneously encroaches upon the standards provided by the federal Wholesome Meat Act of 1967.

■ Defendants argue, however, that section 317.2(h)(2) is void for vagueness; that, therefore, we are left with the absolute standard, "an accurate statement of . . . weight". Though valid, this argument does not end the inquiry in favor of state action. California Article 5–though measuring the absolute provided in California Business and Professions Code section 12211—applies a statistical "averaging" concept for the sealer to make the final determination of whether or not packages in violation should be ordered

"off-sale". The federal Wholesome Meat Act of 1967 does not give state legislatures or state officers—even in the grant of concurrent enforcement jurisdiction—the right to substitute their judgment of what variances, either plus or minus come within the absolute standard of "an accurate statement of . . . in terms of weight." 21 U.S. C. § 601(n)(5)(B). Plaintiff argues the validity of 9 C.F.R. § 317.2(h)(2), citing the Supreme Court sanction of a similar statute in United States v. Shreveport Grain & Elevator Company, 287 U.S. 77, 53 S.Ct. 42, 77 L.Ed. 175 (1932).

■ But *Shreveport, supra,* does not reach the regulation under consideration here. In *Shreveport, supra,* the primary standard was given vitality because the "rules and regulations . . . deal with the *entire subject in detail* under the recital, '(i) the following tolerances and variations' . . . ." (Emphasis added.) The Court then goes on to say at page 84, 53 S.Ct. at page 44:

" . . . Then follows an enumeration of discrepancies due to errors in weighing which occur in packing conducted in compliance with good commercial practice; . . . ."

What *Shreveport, supra,* is telling us is that the *statutory* delegation is viable. It does not give viability to a redelegation that is subject to different enforcement resulting in varying degrees of reasonableness. The statute [21 U.S.C. § 601(n)(5)] gives the Secretary the power of definition of "reasonable variations". The Secretary here has completely failed to accept the duty that can be expressed only in rules and regulations properly promulgated pursuant to federal law.[2] Section 317.2(h)(2) is void for its inadequacy to set any recognizable standard upon which any individual may measure his conduct or his compliance with the law by which he must order his personal or business life.[3]

2. 5 U.S.C. §§ 551–559.

3. Under the regulation as it is written one meat inspector may conclude that x% loss

of moisture can be expected. Given the same factual context, another meat inspector may come to the conclusion that

■ Conceding the invalidity of section 317.2(h)(2) to defendants, they now argue that the state is free to set its own standards of "reasonable variations" citing Florida Lime and Avocado Growers, Inc. v. Paul, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248, rehearing denied, 374 U.S. 858, 83 S.Ct. 1861, 10 L. Ed.2d 1082. The error of such dependence on *Florida Lime, supra,* is evidenced by the recognition by the Supreme Court, beginning at page 142, 83 S.Ct. 1210, that Congress had not foreclosed activity by the states where it can be reconciled with federal regulation. Here the defendants attempt to justify the California statutory scheme by a misunderstanding that labeling, qua labeling, is what the federal Wholesome Meat Act of 1967 is all about and that California's statute is aimed at misbranding. This conclusion is erroneous for two reasons:

1. Congress has defined "misbranding".

2. "Misbranding" has no meaning except insofar as it describes a departure from the labeling description of a commodity within a package.[4]

The Court is aware of the admonition in *Florida Lime, supra,* in measuring preemption when the Supreme Court says at page 142, 83 S.Ct. at page 1217:

"The principle to be derived from our decisions is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakenly so ordained."

■ The Congress here has left no doubt. It is *the* provisions of *the* federal Wholesome Meat Act of 1967 that are applicable to mislabeling or misbranding that must be applied. Neither state legislatures nor state officers can add or subtract from those definitions. If administrative definition of "reasonable variances" is desirable, it is the United States Secretary of Agriculture who must speak. When he fails to speak or misspeaks his authority, the state cannot substitute its voice. Defendants here do not, in any sense of the word, pretend to be applying federal statutory standards. The enforcement of California Business and Professions section 12211 and its implementation in California Administrative Code Article 5 exceeds the concurrent enforcement rights of the state and its officers.

■ This conclusion should not in any way be taken to mean that state officers (sealers) cannot continue their stated mission to protect consumers of their respective jurisdictions. They have available to them a federal statutory scheme which, when properly executed by state or federal officers, secures to the American homemaker the assurance that expected wholesomeness and value is received for each consumer dollar spent. That the evidence here shows the United States Department of Agriculture may have abdicated some of its protective duty, does not justify the application of a *different* labeling requirement by the state of California and its officers.

The claimed exemptions by Rath of its meat and meat food products do not—if beyond the preemption standards recognized herein—need resolution to fully determine the controversy between the parties.

In case No. 72–607–R judgment shall be entered for plaintiff.

In case No. 72–608–R the motion for summary judgment of defendant is denied. The motion for summary judgment of plaintiff is granted.

Accordingly,

It is ordered:

---

y% loss of moisture is reasonable. Delegation of "administrator's function" has never included giving each enforcement officer the "keys to the jailhouse".

4. Each of the twelve categories of misbranding described in 21 U.S.C. § 601 (n) refers to, in some way, a label. Common sense tells us that mislabeling and misbranding are synonymous terms.

1. That defendants and intervenor in case No. 72–607–R, and defendants in case No. 72–608–R, together with their respective deputies, inspectors, officers, agents, servants, employees, attorneys and other persons in active concert or participation with them, and each of them, are restrained and enjoined permanently from applying the provisions of California Business and Professions Code section 12211 and/or the provisions of Title 4, California Administrative Code, Chapter 8, subchapter 2, Article 5, to articles prepared and marketed by plaintiff under United States Department of Agriculture's inspection in accordance with the requirements of the federal Wholesome Meat Act of 1967 [21 U.S.C. § 601 et seq.].

2. The Court reserves the continuing jurisdiction to make any modification to this injunction upon proper application by any party, as the ends of justice may require.