[Civ. No. 13705. Fourth Dist., Div. Two. Dec. 10, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
RATH PACKING COMPANY, Defendant and Appellant;
C. B. CHRISTENSEN, as Director, etc., Intervener and Respondent.

---

**COUNSEL**

Gibson, Dunn & Crutcher, Dean C. Dunlavey, Clayson, Stark, Rothrock & Mann and Roy H. Mann for Defendant and Appellant.

Byron C. Morton, District Attorney, and Gerold von Phalen-Fedoroff, Deputy District Attorney, for Plaintiff and Respondent.

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, Herschel T. Elkins and Allan J. Goodman, Deputy Attorneys General, for Intervener and Respondent.

## OPINION

**KERRIGAN, J.**—This is an action by the government to enjoin a national meat processor from selling allegedly short-weight packages of bacon at the retail level. From a summary judgment granting the injunction, the packing company appeals.

We hold the court erred in deciding the case summarily. Factual issues exist which can be resolved only by a trial on the merits.

### BACKGROUND OF THE LITIGATION

In February 1972, the County of Riverside ("People" or "County") brought suit in the Riverside superior court to enjoin the Rath Packing Company ("Rath") from engaging in "short-weighting" marketing practices. The gist of the complaint was that Rath was selling packages of bacon to retailers which weighed less than the labeled weight at the time of sale to consumers. In addition to injunctive relief, the People sought civil penalties for false advertising (Bus. & Prof. Code, § 17500) and unfair competition (Civ. Code, § 3369).

Rath answered and denied the allegations of short-weighting. It also claimed that the field of meat processing, including the packaging and weighing of meats, had been subject to federal preemption.

Rath also filed a cross-complaint for declaratory relief contending that its practices conformed with the Wholesome Meat Act of 1967 (21 U.S.C.A. § 601 et seq.) and that the act preempted the field of meat product inspection; it requested that the court declare it met federal standards; that Riverside County be enjoined from the imposition of any other than federal inspection requirements; and that the County be enjoined from ordering its bacon "off-sale."[1] The County answered the cross-complaint, denying the claim of preemption and allied contentions.

In July 1972, C. B. Christensen, the Director of Agriculture of the State of California ("State"), entered the litigation upon behalf of the People by filing a complaint in intervention and an answer to the cross-complaint. The state's pleadings contained the same allegations as those of the county, charging Rath with false advertising and unfair competition, denying preemption, and praying for an injunction and civil penalties.

---

[1]Off-sale orders are directives issued by Sealers of Weights and Measures demanding that short-weight commodities be removed from retail counters.

In November 1972, Rath's *cross-action* was dismissed as the result of motions filed by the county and the state and Rath appealed.

In April 1973—four months after the judgments of dismissal were entered in the Riverside action in connection with Rath's cross-complaint—the United States District Court ruled (in consolidated actions similar to the Riverside action) that Los Angeles County and Riverside County could not enforce certain state consumer protection laws and regulations for the purpose of ordering Rath's bacon off-sale. (*Rath Packing Company* v. *Becker* (C.D.Cal. 1973) 357 F.Supp. 529.)

On January 3, 1974—while the first appeal in this court was still pending—a summary judgment on the *complaints* was entered in favor of the county and state in the Riverside action, enjoining Rath from violating sections 12024, 12024.5 and 17500 of the Business and Professions Code, and section 3369 of the Civil Code and assessing Rath $100 in civil penalties. (Bus. & Prof. Code, § 17536.) It is from this summary judgment that the appeal now before us arose.

In April 1974, this court held, in connection with the first appeal dismissing Rath's cross-complaint, that *Becker* was res judicata and that it settled the question of the legality of certain California laws and regulations pertaining to short-weight meat products. Consequently, we determined that Rath was entitled to bring the cross-action seeking to enjoin the enforcement of invalid state laws and we reversed the judgment dismissing Rath's cross-complaint. (*People* v. *Rath,* 4 Civil 13176.)

SUMMARY JUDGMENT

Turning to the summary judgment now before us, the motions in support thereof were based on declarations to the effect that packages of bacon, manufactured by Rath and labeled one pound net weight, were inspected in accordance with state laws at various retail establishments in Riverside County and were found to weigh less than one pound. Rath's answer and declarations in opposition thereto denied the allegations of short-weighting and in effect stated that Rath's bacon was packaged in accordance with the best methods known in the trade and in full compliance with federal law.

The county's and state's motions for summary judgment were based primarily on the declaration of John LaRose, an inspector of the Riverside County Department of Weights and Measures. The statements

contained therein are essentially as follows: Between September 1971—March 1972, he made 21 separate inspections of bacon packaged by Rath. These inspections were conducted at several retail outlets in Riverside County. His inspections resulted in a determination that the lots of bacon prepared and packaged by Rath were short-weight. The samplings were made in accordance with certain state standards.

Rath's declarations were executed by its secretary, corporate director of quality control, and Los Angeles, California plant manager. The main points contained therein follow: The bacon in issue was prepared at Rath's establishments which are subject to inspection by the Secretary of Agriculture pursuant to the terms of the Wholesome Meat Act of 1967 (21 U.S.C.A. § 601 et seq.); each label on a bacon package contains an accurate statement of its net weight, exclusive of the wrapper and packaging materials; Rath "overpacks" its meat (including bacon) because it loses slight amounts of moisture (and, hence, weight) by evaporation; moisture loss varies according to the type of packaging materials used; weight loss occurs in the normal course of good distribution practice; the methods employed by Riverside's Department of Weights and Measures for determining whether there was short-weight in Rath's products were improper; the Riverside inspector never weighed the actual net contents of any package of bacon; he took the gross weight of the package and subtracted therefrom an estimated wrapper weight and thereby merely calculated a net weight; the inspector's estimated wrapper weight was of a wet wrapper whereas federal law prescribes a dry wrapper; a wet wrapper could result in a lesser calculated net weight; in short, the Riverside inspector's weighing procedures were improper and his conclusions were inaccurate; moreover, some of the bacon he weighed was not Rath bacon at all.

California case law regarding the resolution of motions for summary judgment (Code Civ. Proc., § 437c) may be briefly stated as follows.

■ When a party moves for summary judgment, the trial court's function is to determine whether the case presents a triable issue of fact—issue finding, not issue determination, is the court's function at this stage in the proceedings. (*Walsh* v. *Walsh,* 18 Cal.2d 439, 441 [116 P.2d 62]; *Eagle Oil & Ref. Co.* v. *Prentice,* 19 Cal.2d 553, 555 [122 P.2d 264].) ■ To be entitled to summary judgment the moving party must support his motion with affidavits containing facts sufficient to entitle him to judgment (*Coyne* v. *Krempels,* 36 Cal.2d 257, 261 [223 P.2d 244]), provided, of course, that the other party does not introduce counter-affidavits sufficient to present a triable issue of fact. (*Desny* v. *Wilder,* 46

Cal.2d 715, 725-726 [299 P.2d 257].) The facts set forth in the movant's affidavits must be evidentiary in quality, and within the personal knowledge of affiants who could testify competently thereto. (*Hayward Union etc. School Dist.* v. *Madrid,* 234 Cal.App.2d 100 [44 Cal.Rptr. 268].)

■ Summary judgment is a process designed to avoid needless litigation, and thus is a drastic procedure which must be used with caution. (*Slobojan* v. *Western Travelers Life Ins. Co.,* 70 Cal.2d 432, 437 [74 Cal.Rptr. 895, 450 P.2d 271].) Accordingly, all doubts as to the propriety of summary judgment should be resolved against granting the motion. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.,* 62 Cal.2d 412 [42 Cal.Rptr. 449, 398 P.2d 785]; *Slobojan* v. *Western Travelers Life Ins. Co., supra,* 70 Cal.2d 432.)

■ In the present case there is little doubt that the People's motion for summary judgment is supported by an affidavit containing evidentiary facts which, if uncontroverted, would entitle the People to judgment: Inspector LaRose declared that on a number of occasions he weighed Rath bacon packages which contained less than their stated weights. But Rath attempts to frustrate the People's motion with counteraffidavits which allege that LaRose somehow erred in his weighing of these Rath products. Hence, the issue of pivotal importance is whether Rath's affidavits are legally sufficient to counter the People's affidavits.

■ A movant's affidavits are strictly construed, and must show evidentiary facts as opposed to ultimate facts or conclusions. (*Eagle Oil & Ref. Co.* v. *Prentice, supra,* 19 Cal.2d 553, 556; *Scheble* v. *Nell,* 200 Cal.App.2d 435, 439 [19 Cal.Rptr. 375].)[2] The counteraffidavits of a party resisting a motion for summary judgment are liberally construed. (*Stationers Corp.* v. *Dun & Bradstreet, Inc., supra,* 62 Cal.2d 412, 417; *Eagle Oil & Ref. Co.* v. *Prentice, supra,* 19 Cal.2d 553, 556; *Dreyfuss* v. *Burton,* 246 Cal.App.2d 629, 631-632 [54 Cal.Rptr. 843].) California courts, in utilizing the rule of liberal construction, have not required resisting parties to limit their affidavits to strictly evidentiary facts, but have found counteraffidavits containing only ultimate facts and conclusions sufficient to defeat a motion for summary judgment. (*Eagle Oil & Ref. Co.* v. *Prentice, supra,* 19 Cal.2d 553, 556; *Scheble* v. *Nell, supra,* 200 Cal.App.2d 435, 439.)

---

[2]There is no question herein that, even if "strictly" read, LaRose's affidavit is sufficient: Rath does not question its sufficiency in this regard.

This court could read Rath's counteraffidavits (which state only conclusions of ultimate facts regarding LaRose's alleged errors) in accord with the rule of liberal construction and find them sufficient. But such an application of this rule of construction would emasculate the statutory requirement of factual counteraffidavits.

The rule of liberal construction has been criticized for both its artificiality and its unworkability. (Bauman, *California Summary Judgment: A Search for a Standard* (1963) 10 U.C.L.A. L.Rev. 347.) It has been suggested that courts have permitted conclusory statements of ultimate facts to suffice in counteraffidavits whenever a resisting party is unable to come forward with evidentiary facts concerning a particular event because such facts are simply unavailable to that party. (See *Stationers Corp.* v. *Dun & Bradstreet, Inc., supra,* 62 Cal.2d 412; *Frye* v. *Felder,* 246 Cal.App.2d 136 [54 Cal.Rptr. 627]; *Dreyfuss* v. *Burton, supra,* 246 Cal.App.2d 629; *Harding* v. *Purtle,* 275 Cal.App.2d 396 [79 Cal.Rptr. 772].) Thus the "liberal" rule has served as a rather artificial test which has permitted courts to deny motions for summary judgment whenever it was felt that the resisting party should have an opportunity to ascertain for itself what the precise facts regarding a particular issue are. In addition, courts have found the liberal construction test exceedingly difficult to apply since ultimate facts are not clearly distinguishable from evidentiary ones. As a result the test has been applied with much inconsistency and little clarity. (See Bauman, *California Summary Judgment: A Search for a Standard, supra,* (1963) 10 U.C.L.A. L.Rev. 347.)

Both California courts and Legislatures have grappled with the question of what kind of standard to use to test the sufficiency of parties' affidavits in deciding whether or not to grant a motion for summary judgment. The inability of the courts to come up with a satisfactorily concrete test led the Legislature to amend section 437c of the Code of Civil Procedure in 1974 and define a statutory rule of construction. (Stats. 1973, ch. 366, effective Jan. 1, 1974.)[3]

The new statute reads, in relevant part: "In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the admissible evidence set forth in the papers and all inferences reasonably deducible from such evidence except summary

---

[3]The Riverside Superior Court granted summary judgment against Rath on October 31, 1973—two months prior to the time when the amendment of section 437c took effect. Consequently, the court was not statutorily required to apply the standard set forth therein in evaluating the sufficiency of the parties' affidavits.

judgment shall not be granted by the court based on inferences reasonably deducible from such evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (Code Civ. Proc., § 437c.) Restated, a court must look to all facts presented in the parties' affidavits in determining whether or not an issue is triable; the court is not limited to a search for "facts" regarding a particular issue but may draw inferences regarding that issue from related facts set forth in the affidavits. This rule seems to avoid the artificial distinction which courts were previously required to draw between ultimate and evidentiary facts.

But the summary judgment statute, as amended, is not controlling in the present case, since the judgment was granted well before the amendment's effective date. However, the amendment does elucidate a test of affidavit construction which can be utilized under the old statute (since it set forth no prescribed procedure for the evaluation of affidavits). We find this test to be particularly appropriate and workable under the circumstances of this case.

█ The critical fact in issue here is whether LaRose properly weighed Rath's bacon packages. The People claimed, through LaRose, that the bacon was properly weighed. Rath's representatives, on the other hand, were not privy to the weighings and cannot set forth as fact, the inaccuracy of those measurements. However, Rath's declarations do contain facts from which the reasonable inference may be drawn that LaRose erred. Rath officials made the following averments: Its bacon packages were overpacked sufficiently (in accord with industry standards) to insure that they would not be short-weight at the retail level; the procedure LaRose employed to determine tare weights was inaccurate, and thus, resulted in the erroneous calculation of net weights; some of the bacon package codes reported by LaRose as Rath products were not in fact Rath products at all. These facts lead one to the reasonable inference that LaRose did indeed err in his weighing of Rath bacon products. This inference, under the test enunciated above, is sufficient to counter the People's statement of fact regarding the accuracy of the weighings.

The Attorney General correctly notes that section 664 of the Evidence Code requires the trial court to indulge in the presumption that LaRose, a state official, performed his official task (in weighing Rath's bacon) regularly and accurately. The People argue that Rath has not rebutted the presumption and, consequently, the issue of the accuracy of the

weighings is presumptively established for summary judgment purposes. But this argument overstates the importance of the presumption at this stage in the proceedings.

The effect of the presumption is that it shifts the burden of proof on this issue to Rath: at trial, Rath must show that LaRose actually erred in his measurements. Thus, the impact of the presumption at this stage of the proceedings is to effectively place the People in the position of a defendant who has moved for summary judgment; it must show that Rath's accusation of error has "no merit." (*Jack* v. *Wood,* 258 Cal.App.2d 639, 647 [65 Cal.Rptr. 856].) But as a practical matter in this case this juxtaposition of the parties' postures does not alter the substantive showing that the People are required to make for summary judgment purposes: they must demonstrate that there is no possible way in which Rath can claim error in the weighing procedures used by LaRose. This plaintiff cannot do.

To successfully counter a motion for summary judgment, the resisting party need only demonstrate a "possibility" of being able to rebut the presumed accuracy of LaRose's measurements. (*Orser* v. *George,* 252 Cal.App.2d 660 [60 Cal.Rptr. 708]; *Whaley* v. *Fowler,* 152 Cal.App.2d 379 [313 P.2d 97].) As indicated previously, Rath is entitled to demonstrate this possibility inferentially. Rath's affidavits present facts from which weighing error on LaRose's part may be inferred; such facts undeniably suggest the "possibility" that the People's presumption could be overcome. Rath's showing of a possible rebuttal to the presumption was sufficient to defeat the motion for summary judgment. The judgment must be reversed.

## LAW OF THE CASE

Having disposed of this case in reversing the summary judgment because a triable issue of fact is presented, this court need not comment upon the other arguments raised by the parties to this action. But the court is troubled by the dispute evidenced in the briefs as to what effect this court's prior unpublished decision in reversing the summary judgment against Rath on its cross-complaint (*People* v. *Rath,* 4 Civil 13176) has on this present litigation involving the state's complaint. In order to clarify this issue for the benefit of the trial court, we have decided to discuss it in some detail. Simply stated, it is our opinion that our previous holding is the law of the case insofar as litigation on this complaint is concerned.

■ A decision of an appellate court, which states a rule of law necessary for the disposition of the case, establishes that rule and makes it determinative of the rights of the *same parties* in any subsequent retrial or appeal in the *same case*. (*Tally* v. *Gandahl,* 151 Cal. 418, 421 [90 P. 1049]; 6 Witkin, Cal. Procedure (1971) § 633, p. 4552.) Rulings which constitute the law of the case must have been "necessarily" involved in the case, though they need not be essential to its resolution. (*Milsap* v. *Balfour,* 158 Cal. 711, 714 [112 P. 450]; *Steelduct Co.* v. *Henger-Seltzer Co.,* 26 Cal.2d 634, 643 [160 P.2d 804].)

■ The Attorney General argues that our first decision on the cross-complaint (*Rath-I*) cannot be law of the case in regard to the litigation involving the complaint for two reasons: (1) the latter is not the "same case" and (2) the "same parties" are not involved in these actions. We are unable to agree with these contentions.

Both the complaint and cross-complaint involve the same operative facts and questions of law: resolution of one necessarily includes resolution of the other. In their complaint, the People allege that Inspector LaRose has determined Rath bacon to be consistently short-weight and hence, defendant Rath to be in violation of a variety of state statutes. The complaint seeks injunctive relief against future occurrence of short-weighting practices. On the other hand, Rath's cross-complaint seeks injunctive relief from the very state statutes brought into issue by the original complaint. The two causes are being tried together in the same courtroom, and share a common superior court docket number. Clearly, for all practical purposes, these actions are the "same case," and in the interests of judicial consistency and economy the same law of the case should be applied to both.

The state's second and most beguiling claim is that the "same parties" are not involved in the actions on the complaint and cross-complaint. The Attorney General argues that the cross-complaint is an action against the named state officials only, and that the federal case to which we gave res judicata effect in the first appeal (*Rath Packing Company* v. *Becker, supra* (C.D.Cal. 1973) 357 F.Supp. 529) was likewise an action in which particular *state officials,* not the "People" of the state, were enjoined.

In a most technical sense, the Attorney General is correct: The People were not a party to either our first decision or the federal case. But as a practical matter, the law of the case enunciated in our decision on the cross-complaint *should* be applied to them.

First, Rath in its cross-complaint and in the federal action sought injunctive relief against *all* those state officials empowered to enforce state statutes regulating meat package misbranding—no more sweeping injunctive claim against the "People" or the state could have been made. Second, as a matter of law, the federal court holding, which was given res judicata effect against state officials in our decision on the cross-complaint, is also res judicata in regard to "the People" and "the State." (See *Bernhard* v. *Wall,* 184 Cal. 612, 623-624 [194 P. 1040]; *Price* v. *Sixth District Agricultural Assn.,* 201 Cal. 502, 513 [258 P. 387] [both of which held the People bound, as a matter res judicata, when injunctions had been issued against government officers in the performance of their official duties].)

If law of the case effect were not accorded to our decision on the cross-complaint in regard to the trial on the complaint, unnecessary litigation could arise concerning the effect of *Rath Packing Company* v. *Becker, supra,* 357 F.Supp. 529, and thereby frustrate the efficient administration of justice. For reasons of judicial economy (and without compromising the positions of the parties) our decision in *Rath-I* should be accorded standing as law of the case for purposes of the trial on the state's complaint.

This then brings us to the heart of the parties' dispute regarding our holding in *Rath-I:* what precisely did this court hold in that case? Succinctly stated, we held that the parties were bound by the *Becker* judgment.

*Becker* held that the states have concurrent jurisdiction to enforce the misbranding provisions of the federal Wholesome Meat Act (21 U.S.C.A. § 601 et seq.),[4] provided, of course, that the state labeling requirements are not in addition to or different from those delineated in the federal act. (21 U.S.C.A. § 678.)

The *Becker* court noted that the United States Secretary of Agriculture *can,* under the statute, provide for "reasonable variances" between actual and package label weights (21 U.S.C.A. § 601(n)(5)), but that the only variance standards thus far published by the Secretary were inadequate and impermissibly vague. Consequently, the court held that the states

---

[4]The federal statute declares packaged meat products to be misbranded unless they possess a label bearing an accurate statement of the quantity of the contents.

The states are given concurrent jurisdiction to enforce the federal statute in 21 United States Code Annotated, section 678; see also *Rath Packing Company* v. *Becker, supra,* 357 F.Supp. 529, 532-533.

must enforce the precise terms of the federal act—which require absolute accuracy in the weight-labeling of prepackaged meat products.

Hence, the *Becker* court found *one* particular California state statute, section 12211 of the Business and Professions Code, to be preemptively invalid—it conflicted with the federal statutory scheme by expressly permitting some variances between actual and labeled meat package weights.[5] Section 12211 authorizes the State Director of Weights and Measures to promulgate a weighing procedure to implement the provisions of the code section. A procedure for weighing and averaging package lots in accord with section 12211 was set forth by the Director in article 5 of the California Administrative Code. (Cal. Admin. Code, tit. 4, § 2930 et seq.) And to the extent that the procedural provisions of article 5 comply with the provisions of section 12211 these, too, were struck down by the *Becker* court as being inconsistent with the federal statute.

In its brief, Rath argues that the *Becker* case absolutely voided section 12211 *and* article 5 of the Administrative Code for all purposes and, sub silentio, struck down sections 12024, 12024.5 and 17500 of the Business and Professions Code as well as section 3369 of the Civil Code—at least insofar as enforcement of the federal Wholesome Meat Act is concerned. Rath further argues that in giving *Becker* res judicata effect and in reversing the summary judgment in *Rath-I*, we endorsed this aforestated interpretation of the *Becker* decision. In so doing, Rath grossly misreads the *Becker* holding and our prior decision.

The holding in *Becker* was narrowly drawn: the federal court ruled only that section 12211 was preempted by the federal statute, and that article 5 of the California Administrative Code was likewise invalid but *only insofar as it reflected the provisions of section 12211.* Quoting *Becker:* "The enforcement of California Business and Professions Code section 12211 and *its implementation* in California Administrative Code article 5 exceeds the concurrent enforcement rights of the state and its officers." (P. 535; italics added.) Thus, Becker's invalidation of article 5 only extends to that portion of the article which permits state inspectors to order meat "off sale" using lot-average weighing techniques, or otherwise permits the net weight of packaged meats to fall below their stated wrapper weights. The actual weighing procedure whereby the net weight

---

[5]The California statute provides that the State Director of Weights and Measures may establish a procedure whereby "average lot weights" of packaged meat products are determined, and if such average lot weights (per package) are less than stated weights, the entire lot may be ordered "off sale." Implicit in this averaging scheme is the possibility that some packages in a given lot will be short-weight. To the extent that such short-weights are permitted, this statutory scheme is inconsistent with the federal statute.

of the contents of each package of meat is calculated was not invalidated by the *Becker* decision. Rath's contention that LaRose's weighings, taken in accord with article 5 of the Administrative Code, are invalid under *Becker* is without foundation and the use of said measurements at trial is not foreclosed by the law of the case enunciated in *Rath-I*—which applied *Becker's* holdings as res judicata in the superior court action in Riverside.[6]

Rath's argument that *Becker* effectively struck down *all* California statutes prohibiting short-weighting lacks integrity. The *Becker* court found that only *one* state statute (Bus. & Prof. Code, § 12211) had been preempted by the federal act;[7] the validity of other California code sections was not determined by the federal court in its decision, nor by this court in giving that federal decision res judicata effect in *Rath-I*. Rath's argument is in error and represents a gross misunderstanding of the *Becker* case and of our previous decision.

In sum, the law of the case insofar as this litigation is concerned—as set forth in our previous decision on the cross-complaint—is that section 12211 of the Business and Professions Code is inoperative in that it is preempted by the federal Wholesome Meat Act. To the extent that article 5 of the California Administrative Code permits variances between product net weights and package stated weights (thereby implementing § 12211) it is likewise invalid. But the law of the case *is not* that the weighing techniques prescribed in article 5 are invalid, nor that other California code sections have been held invalid.

### DISPOSITION

We reverse the summary judgment entered on the complaint and remand this case to the superior court for trial.

Gardner, P. J., and Tamura, J., concurred.

[6]It should be noted that the vitality of article 5 of the California Administrative Code is not absolutely dependent upon the validity of section 12211. The authority offered for the promulgation of article 5 includes sections 12211 *and* 12027 of the Business and Professions Code. Section 12027 provides that the State Director of Weights and Measures may make such regulations as are necessary for carrying out the purposes of the Business and Professions Code division relating to fair-weight practices. Since the entire division is not inconsistent with the federal statute, article 5 retains its constitutional vitality in spite of the fact that section 12211 was absolutely stricken.

[7]In fact, the federal court later refused to modify its decision at Rath's request so as to include sections 12024, 12024.5, 12601, 12603 and 17500 of the Business and Professions Code and section 3369 of the Civil Code as being inconsistent with, and therefore preempted by the Wholesome Meat Act.