**GENERAL MILLS, INC., a corporation, et al., Plaintiffs-Counterdefendants-Appellants,**

**v.**

**Joseph W. JONES, as Director of the County of Riverside Department of Weights and Measures, Defendant-Counterclaimant-Appellee.**

**GENERAL MILLS, INC., a corporation, et al., Plaintiffs-Counterdefendants-Appellees,**

**v.**

**Joseph W. JONES, as Director of the County of Riverside Department of Weights and Measures, Defendant-Counterclaimant-Appellant.**

**Nos. 74–1051, 73–3583.**

United States Court of Appeals, Ninth Circuit.

Oct. 29, 1975.
Certiorari Granted April 19, 1976.
See 96 S.Ct. 1663.

---

Loyal E. Keir, Deputy County Counsel (argued), Riverside, Cal., for Jones.

Dean C. Dunlavey (argued), of Gibson, Dunn & Crutcher, Los Angeles, Cal., for General Mills and others.

## OPINION

Before BROWNING and TRASK, Circuit Judges, and RICH,* Judge, United States Court of Customs and Patent Appeals.

RICH, Judge:

This suit was brought by the three plaintiff corporations, General Mills, Pillsbury, and Seaboard Allied Milling, hereinafter termed "the millers," to enjoin the enforcement of certain California statutes and regulations pertaining to the labeling by weight of packaged foods at retail. Plaintiffs also seek declarations under 28 U.S.C. § 2201 and § 2202 that these statutes and regulations are preempted by federal law and that the means of enforcement employed, off-sale orders under Cal. Business and Professions Code § 12211, violated the due process clause of the Fourteenth Amendment, unreasonably burdened interstate commerce, and were imposed in violation of California law. The millers requested a three-judge district court pursuant to 28 U.S.C. § 2281.[1] Defendant Jones, as Director of the County of Riverside Department of Weights and Measures, is the official responsible for the enforcement of state weights and measures laws in his county. Jurisdiction in the district court was based on 28 U.S.C. § 1331(a), as the millers alleged that a case or controversy arising under the laws or Constitution of the United States involving more than $10,000 was presented; the existence of the jurisdictional amount is not disputed.

The district court, in an unreported memorandum and order, attached hereto as an Appendix, granted in part the relief requested, and the parties filed cross-appeals from the judgment. We have jurisdiction of these appeals under 28 U.S.C. § 1291.

This case is a companion to *Rath Packing Co. v. Becker*, 530 F.2d 1295, etc.,

---

* The Honorable Giles S. Rich, Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. Section 2281 provides:

An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

decided concurrently herewith. For the sake of brevity in this opinion we shall refer at times to our opinion in *Rath.*

### Background

This case concerns the packaging and weighing of flour sold to consumers for home use. The millers manufacture, package, label, and distribute in interstate commerce wheat flours, which are within the definition of "food" in the federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301 et seq., and are considered "consumer commodities" under the federal Fair Packaging and Labeling Act (FPLA), 15 U.S.C. §§ 1451–1461.

Packaged flour is hygroscopic, and gains or loses moisture depending on the ambient humidity, unless packaged in airtight containers. If the relative humidity of the surrounding air is less than 60%, flour loses moisture, and hence weight. The converse is true at relative humidities above 60%. During the course of good distribution practices the ambient relative humidity is often less than 60%, and the packages of flour often lose weight. At the time the flour was packed, it contained 13–14% water by weight, which is within the identity standard for flour promulgated by the Secretary of Health, Education, and Welfare pursuant to 21 U.S.C. § 341 in regulations set forth at 21 CFR 15.1. Jones conceded at argument before the district court that the compliance of the packages of flour with the federal weight labeling standards discussed *infra* when they left the millers' plants was not a material issue of fact. We take this to mean that, for the purposes of this case, the millers' flour was correctly labeled as to net weight under federal law when it left their plants.

### Federal Statutes and Regulations

The federal statutory provisions covering the labeling of flour are found in the FDCA and the FPLA. Section 403 of the FDCA, 21 U.S.C. § 343, provides:

A food shall be deemed to be misbranded—

\* \* \* \* \* \*

(e) If in package form unless it bears a label containing (1) the name and place of business of the manufacturer, packer, or distributor; and (2) an accurate statement of the quantity of the contents in terms of weight, measure, or numerical count: *Provided,* That under clause (2) of this subsection reasonable variations shall be permitted, and exemptions as to small packages shall be established, by regulations prescribed by the Secretary.

In 21 CFR 1.8b(q) the Secretary purported to implement the proviso:

(q) The declaration of net quantity of contents shall express an accurate statement of the quantity of contents of the package. Reasonable variations caused by loss or gain of moisture during the course of good distribution practice or by unavoidable deviations in good manufacturing practice will be recognized. Variations from stated quantity of contents shall not be unreasonably large.

Under the FPLA, Section 3, 15 U.S.C. § 1452, provides:

(a) It shall be unlawful for any person engaged in the packaging or labeling of any consumer commodity (as defined in this chapter) for distribution in commerce, or for any person (other than a common carrier for hire, a contract carrier for hire, or a freight forwarder for hire) engaged in the distribution in commerce of any packaged or labeled consumer commodity, to distribute or to cause to be distributed in commerce any such commodity if such commodity is contained in a package, or if there is affixed to that commodity a label, which does not conform to the provision of this chapter and of regulations promulgated under the authority of this chapter.

Section 4 of the FPLA, 15 U.S.C. § 1453, contains the FPLA's labeling standards:

(a) No person subject to the prohibition contained in section 1452 of this title shall distribute or cause to be distributed in commerce any packaged consumer commodity unless in conformity with regulations which shall

be established by the promulgating authority pursuant to section 1455 of this title which shall provide that—

\* \* \* \* \* \*

(2) The net quantity of contents (in terms of weight, measure, or numerical count) shall be separately and accurately stated in a uniform location upon the principal display panel of that label \* \* \*.

The FPLA is tied to the FDCA by Section 7 of the FPLA, 15 U.S.C. § 1456:

(a) Any consumer commodity which is a food, drug, device, or cosmetic, as each such term is defined by section 321 of Title 21, and which is introduced or delivered for introduction into commerce in violation of any of the provisions of this chapter, or the regulations issued pursuant to this chapter, shall be deemed to be misbranded within the meaning of sections 331 to 337 of Title 21 \* \* \*.

### California Laws and Regulations

The California regulatory scheme depends upon two provisions of the California Business and Professions Code. Section 12211 of the Code provides in material part:

Each sealer shall, from time to time, weigh or measure packages, containers or amounts of commodities sold, or in the process of delivery, in order to determine whether the same contain the quantity or amount represented and whether they are being sold in accordance with law.

\* \* \* \* \* \*

Any such rule or regulation, or amendment thereof, shall be adopted and promulgated by the director in conformity with the provisions of \* \* \* [various sections] of the Government Code; provided, that the *average weight* or measure of the packages or containers in a lot of any such commodity sampled *shall not be less,* at the time of sale or offer for sale, *than the net weight* or measure

stated upon the package, and provided further, that *said rules or regulations* applicable to food, as defined in Section 26450 of the Health and Safety Code, insofar as possible, *shall not require higher standards and shall not be more restrictive than regulations, if any, promulgated* by the Department of Health, Education, and Welfare, Food and Drug Administration, *under the provisions of the Federal Food, Drug and Cosmetic Act.*

\* \* \* \* \* \*

Whenever a lot or package of any commodity is found to contain, through the procedures authorized herein, a less amount than represented, the sealer shall in writing order same off sale and require that an accurate statement of quantity be placed on each such package or container before same may be released for sale by the sealer in writing. The sealer may seize as evidence any package or container which is found to contain a less amount than that represented. [Emphasis added.]

Section 12607 of the Business and Professions Code, on which Jones also relies, provides in material part:

Whenever a consumer commodity is offered for sale, exposed for sale or sold without a statement of net quantity appearing thereon \* \* \*, the sealer shall in writing order the commodity off sale and require that a correct statement of net quantity be placed on the commodity before the same may be released by the sealer.

The regulations implementing Sections 12211 and 12607 are in 4 Cal. Administrative Code ch. 8, subch. 2, as in *Rath.* The weighing and off-sale procedures described in our *Rath* opinion as applicable to bacon also apply to the flour herein, except, of course, that the tare in this case is the weight of an empty paper flour bag.

### Proceedings Below

At various times from October to December 1972, inspectors under Jones' su-

pervision examined at Riverside County food distributors bags of flour manufactured and packed by the millers and, finding that bags in certain lots were short weight under the California statutes and regulations described *supra*, ordered those lots of flour off sale. Jones ordered additional lots of flour off sale in July 1973, after the commencement of this action.

In April 1973 the millers brought this action against Jones for declaratory and injunctive relief against Jones' acts. Jones counterclaimed, alleging that he had ordered off sale some 30,618 bags of flour totalling 191,731 lbs. and requesting declarations antithetical to those requested by the millers and an injunction against continuing violations of California law by the millers. There are no pending or concluded proceedings in the state courts pertaining to the ordering off-sale of the millers' flour, so the jurisdictional problem discussed in part I of our *Rath* opinion is not present in this case.

The case was decided on the basis of cross-motions for summary judgment supported by affidavits. As shown in the Appendix to this opinion, the district court granted in part the relief requested. Both parties appealed the determinations adverse to them.

## I

Before considering the merits of this controversy we must decide whether the single district judge correctly denied the millers' motion for the convening of a three-judge district court under 28 U.S.C. § 2281. If the district court was in error, we would have to remand this case for a new trial by a three-judge court, as the single judge below would have lacked jurisdiction of the subject matter. *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 153, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); C. Wright, *Law of Federal Courts,* § 50 (2d Ed., 1970). We hold that the action was properly heard and decided by a single judge for the reasons discussed below.

 In a suit to enjoin the enforcement of a state law or regulation claimed to be contrary to the federal constitution, 28 U.S.C. § 2281 has been construed to require a three-judge district court to hear the action only if the constitutional question presented is substantial. A question is insubstantial if it is "obviously without merit" or because "its unsoundness so clearly results from the previous decisions of this [the United States Supreme] court as to foreclose the subject * * *." *Ex parte Poresky,* 290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152 (1933); *Swift & Co. v. Wickham,* 382 U.S. 111, 115, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965); *California Water Service Co. v. City of Redding,* 304 U.S. 252, 255, 58 S.Ct. 865, 82 L.Ed. 1323 (1938).

 The contention that California's regulatory scheme is rendered invalid by the Commerce Clause *alone* is not substantial. The regulation of weights and measures has historically been, and is now, a matter of local concern and within the competent exercise of the police power of the States. See Judge Friendly's historical analysis for the district court in *Swift & Company v. Wickham,* 230 F.Supp. 398, 402–403 (S.D.N.Y.1964); *appeal dismissed,* 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965), aff'd., 364 F.2d 241 (2d Cir. 1966); see also *Savage v. Jones,* 225 U.S. 501, 32 S.Ct. 715, 56 L.Ed. 1182 (1912). Any holding that the enforcement of state weights and measures regulations by California unreasonably burdens interstate commerce is foreclosed by the Supreme Court's decision in *Sligh v. Kirkwood,* 237 U.S. 52, 35 S.Ct. 501, 59 L.Ed. 835 (1915), in which the Court held that a Florida law which made the delivery of immature citrus fruit for shipment in interstate commerce a criminal offense was a valid exercise of Florida's police power and did not unreasonably burden interstate commerce. We note a claim that a state law is invalid because of conflict with federal law enacted pursuant to the power of Congress under the Commerce Clause to regulate interstate commerce does *not* raise a constitutional question under the Commerce Clause requiring resolution of the issue by a three-judge court. *Swift & Co. v. Wickham, supra,* 382 U.S. at 120, 128, 86 S.Ct. 258.

Similarly, the millers' contention that the ordering of their flour off sale by Jones without a prior hearing violates Fourteenth Amendment due process is without substance. In *Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594, 599–600, 70 S.Ct. 870, 94 L.Ed. 1088 (1950), the Court held that the seizure without a prior hearing of allegedly misbranded articles under Section 304(a) of the Food, Drug and Cosmetic Act, 21 U.S.C. § 334(a), did not violate due process. This holding was specifically approved by the Court in *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 339, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), as one directed to those special circumstances in which the important governmental or general public interest permits postponement of notice and an opportunity for a hearing without the deprivation of due process. See *Fuentes v. Shevin,* 407 U.S. 67, 90–93, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), for a discussion of the range of circumstances in which postponement of hearing is consistent with due process requirements.[2] Since California has adequate procedures by which the propriety of off-sale orders may be tested after the fact, by petition for writ of mandamus or action for injunction under state law, this contention of the millers is foreclosed and without substance. We perceive no difference in substance between California's undisputed interest in protecting its citizens from packaged articles which bear inaccurate weight information on them and the interests discussed in *Sniadach* and *Fuentes* whose nature permits seizure of property without prior hearing.

II

In finding that 21 CFR 1.8b(q), *supra,* was invalid, the district court referred to the reasoning it employed in *Rath Packing Co. v. Becker,* 357 F.Supp. 529 (C.D.Cal.1973), to invalidate the analogous regulation under the Wholesome

Meat Act of 1967, 21 U.S.C. § 601 et seq. In *Rath* the district court said, 357 F.Supp. at 534 (emphasis in original, footnotes omitted):

Defendants argue, however, that section 317.2(h)(2) is void for vagueness; that, therefore, we are left with the absolute standard, "an accurate statement of . . . weight". Though valid, this argument does not end the inquiry in favor of state action. California Article 5—though measuring the absolute provided in California Business and Professions Code section 12211—applies a statistical "averaging" concept for the sealer to make the final determination of whether or not packages in violation should be ordered "off-sale". The federal Wholesome Meat Act of 1967 does not give state legislatures or state officers—even in the grant of concurrent enforcement jurisdiction—the right to substitute their judgment of what variances, either plus or minus come within the absolute standard of "an accurate statement of . . . in terms of weight." 21 U.S.C. § 601(n)(5)(B). Plaintiff argues the validity of 9 C.F.R. § 317.2(h)(2), citing the Supreme Court sanction of a similar statute in *United States v. Shreveport Grain & Elevator Company,* 287 U.S. 77, 53 S.Ct. 42, 77 L.Ed. 175 (1932).

But *Shreveport, supra,* does not reach the regulation under consideration here. In *Shreveport, supra,* the primary standard was given vitality because the "rules and regulations . . . deal with the *entire subject in detail* under the recital, '(i) the following tolerances and variations' . . . ." (Emphasis added.) The Court then goes on to say at page 84, 53 S.Ct. at page 44:

". . . Then follows an enumeration of discrepancies due to errors in weighing which occur in packing conducted in compliance with good commercial practice; . . . ."

*North Georgia Finishing Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), does not affect the continuing validity of Part VI of the Court's opinion in *Fuentes.*

2. The subsequent uncertainty in the scope of the *Fuentes* holding created by *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), and fanned afresh by

What *Shreveport, supra,* is telling us is that the *statutory* delegation is viable. It does not give viability to a redelegation that is subject to different enforcement resulting in varying degrees of reasonableness. The statute [21 U.S.C. § 601(n)(5)] gives the Secretary the power of definition of "reasonable variations." The Secretary here has completely failed to accept the duty that can be expressed only in rules and regulations properly promulgated pursuant to federal law. Section 317.-2(h)(2) is void for its inadequacy to set any recognizable standard upon which any individual may measure his conduct or his compliance with the law by which he must order his personal or business life.

The provision of the Wholesome Meat Act analogous to 21 U.S.C. § 343(e) of FDCA, *supra,* is 21 U.S.C. § 601(n)(5), referred to by the court in the above quotation from *Rath.*

For the reasons given in Part II of our opinion in *Rath,* we do not concur in the district court's reasoning from the *Shreveport Grain* case or in its opinion that the use of the term "reasonable" in 21 CFR 1.8b(q) fails to give persons adequate notice of the variations from accurate weight which the Secretary will countenance in the enforcement of the FDCA. We hold 21 CFR 1.8b(q) is valid and forms part of the federal labeling standard under the FDCA.

### III

The differences between the FDCA and FPLA, on the one hand, and the Wholesome Meat Act of 1967, on the other, require a different analysis of the preemption issue from the analysis we employed in part III of our *Rath* opinion.

We find no unmistakable Congressional mandate that the FDCA and FPLA exclude weights and measures regulations by the States which impose standards which differ from the federal standards set by those statutes and any regulation promulgated thereunder. See

*Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963).

First, as explained in Part I of this opinion, weights and measures regulations are normally within the exercise of the States' police powers, and are not subject matter of a nature demanding exclusive federal regulation in order to achieve uniformity vital to national interests. Cf. *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

Second, the statutory language and the legislative history of the FDCA and FPLA fail to demonstrate the same Congressional intent to displace state regulation which we found in *Rath.* The FDCA contains *no* express preemptive language. Sections 11 and 12 of the FPLA, 15 U.S.C. §§ 1460 and 1461, provide as follows:

§ 1460. \* \* \*

Nothing contained in \* \* \* [the FPLA] shall be construed to repeal, invalidate, or supersede—

(a) the Federal Trade Commission Act or any statute defined therein as an antitrust Act;

(b) the Federal Food, Drug, and Cosmetic Act; or

(c) the Federal Hazardous Substances Labeling Act.

§ 1461. \* \* \*

It is thereby declared that *it is the express intent of Congress to supersede* any and all laws of the States or political subdivisions thereof insofar as they may now or hereafter provide for *the labeling of the net quantity of contents* of the package of any consumer commodity covered by this chapter which are *less stringent* than or require information different from the requirements of section 1453 of this title or regulations promulgated pursuant thereto. [Emphasis added.]

The scope of state labeling[3] regulations not preempted, and thus permitted, by § 1461 is whatever is not "less stringent"

---

**3.** We see no difference in substance between "misbranding" and "mislabeling" in this case.

than the FPLA's requirement, which, as stated in 15 U.S.C. § 1453, is that labels "separately and accurately" state the net quantity of contents. This is a wide sweep indeed, not in keeping with an express Congressional intent to preempt all state standards different from the federal standard.

The legislative history of the FPCA shows a regard in the Congress for the exercise of State police power. H.R.Rep. No.2118, 59th Cong., 1st Sess., March 7, 1906, states with respect to the first federal Food and Drug Act, which has evolved into the FDCA:

> It is not proposed by the bill to interfere in any way with the power of the State officials over local trade, but the purpose of the bill is to give to State officials the aid of the National Government and to receive from the State officials their aid in the enforcement of the national law.

We are not aware of any intervening change in the intent of Congress with respect to the impact of the FDCA on state regulation.

In a similar vein, S.Rep.No.1186, 89th Cong., 2d Sess., May 25, 1966, U.S.Code Cong. & Admin.News 1966, pp. 4069, 4077 on the FPLA, states:

> Section 12 [15 U.S.C. § 1461] provides that regulations promulgated under the act shall supersede State law only to the extent that the States impose net quantity of contents labeling requirements which differ from requirements imposed *under the terms of the act.* The bill is not intended to limit the authority of the States to establish such packaging and labeling standards as they deem necessary in response to State and local needs. [Emphasis added.]

We cannot conclude that in the FDCA and FPLA Congress has evidenced an intent to displace *all* state regulation of the net weight statements appearing on labels affixed to "food" or "consumer

commodities." This does not end our inquiry, however, since Congress has made it clear that the scope of exercise of the police power left to California is confined to the enforcement of standards which are not "less stringent" than the FPLA's standard of a "separate and accurate" net weight statement, or standards as to which the FPLA makes no corresponding requirements, which are not involved in this case. And, also, as stated in *Kelly v. Washington,* 302 U.S. 1, 10, 58 S.Ct. 87, 92, 82 L.Ed. 3 (1937):

> There is no constitutional rule which compels Congress to occupy the whole field. Congress may circumscribe its regulation and occupy only a limited field. When it does so, state regulation outside that limited field and otherwise admissible is not forbidden or displaced. The principle is thoroughly established that the exercise by the state of its police power, which would be valid if not superseded by federal action, is superseded only where the repugnance or conflict is so "direct and positive" that the two acts cannot "be reconciled or consistently stand together."

We must therefore determine whether California's scheme impermissibly *conflicts* with federal law; this is an inquiry different from that where express preemption is involved. Cf. *Campbell v. Hussey,* 368 U.S. 297, 300, 82 S.Ct. 327, 7 L.Ed.2d 299 (1961). The "not less stringent" test of 15 U.S.C. § 1461 is *one* test for determining whether impermissible conflict exists, and it is a test specifically intended by Congress for use in this situation.

We note that, by virtue of the "savings provisions" of 15 U.S.C. § 1460, compliance with the FDCA is to be considered compliance with the FPLA. By the same token, any state net weight labeling standard which is *not different* from the standard set forth in 21 U.S.C. § 343(e) and 21 CFR 1.8b(q) cannot be

---

15 U.S.C. § 1456 defines "misbranding" to include violations of 15 U.S.C. § 1453, which *Jones* argues pertains only to "labeling re-

quirements." We think Jones' argument lacks substance.

considered "less stringent" than the FPLA standard.[4]

■ Our discussion in Part III of our *Rath* opinion disposes of this point on Cal.Bus. and Prof.Code § 12211. The FDCA standard is virtually the Wholesome Meat Act standard verbatim. We held in *Rath* that § 12211 and the regulations implementing it, 4 Cal.Admin. Code ch. 8, subch. 2, establish a different net weight labeling standard than the Wholesome Meat Act standard, because they fail to provide for the "reasonable variations" permitted by 9 CFR 317.-2(h)(2). The same conclusion pertains here.

Section 12607, *supra,* presents a slightly different picture because of other provisions with which it must be construed. Cal.Bus. and. Prof.Code, §§ 12613 and 12614 provide in material part:

§ 12613. * * * If any provision of this chapter is less stringent or requires information different from any requirement of Section 4 of the Act of Congress entitled "Fair Packaging and Labeling Act" * * * or of any regulation promulgated pursuant to such act, the provision shall be inoperative to the extent that it is less stringent or requires information different from any such federal requirement, in which event each such federal requirement, is a part of this chapter.

§ 12614. * * * When a commodity in a container is sold and there is a discrepancy between the actual quantity of the commodities in the container and the net quantity of the contents thereof indicated on the container or between the fill of the commodity in the container and the capacity of the container there is no violation of this chapter.

(a) If such discrepancy is due to unavoidable leakage, shrinkage, evaporation, waste, or causes beyond the control of the seller acting in good faith.

Sections 12607, 12613, and 12614 appear in a chapter of the Code different from that containing § 12211. By virtue of the variation standard in § 12614 the provision in § 12607 that "the quantity of the contents so marked shall be the net amount of the commodity in the package or container" can be seen to establish a net weight labeling standard very similar to the FDCA standard, but which, by permitting variations arising from causes other than gain or loss of moisture, as specified in 21 CFR 1.8b(q), must be considered "different" from the FDCA standard, in the absence of § 12613, as discussed *infra.*

We are, therefore, left with applying the "not less stringent" test. As we see it, it is not particularly relevant that California may order off sale packages of flour that comply with the FDCA and FPLA; a state scheme is "less stringent" than the federal scheme if it permits marketing of packages of flour that do not conform to the federal net weight labeling standards.

As explained in our *Rath* opinion, § 12211 and the regulations in 4 Cal.Admin.Code ch. 8, subch. 2, evaluate compliance with net weight labeling standards solely by determining by statistical sampling techniques the average weight of a *lot* of packages, any of which may weigh more or less than the weight stated on its label. In a sense, by refusing to recognize any of the variations permitted by 21 CFR 1.8b(q), these provisions are stricter than the federal law. But § 12211 only proscribes sale of lots of packages whose average actual weights are *less* than the label weights. The federal law requires "accurate" weight, proscribing packages that are overweight as well as underweight. We recognize that step 10 of the California procedure as described in the *Rath* opinion takes variations of individual packages from accurate weight into account in determining whether lots should be ordered off sale; but these variations are evalu-

---

4. To hold otherwise would create the anomalous situation in which a state scheme embodying the FDCA standard, including the reasonable variations of 21 CFR 1.8b(q), would vio-

late 15 U.S.C. § 1461 since it allowed variance from the strict accuracy standard of the FPLA, 15 U.S.C. § 1453.

ated solely on a statistical basis, and may be greater than, as well as less than, the reasonable variations permitted each package by 21 CFR 1.8b(q) and may arise from circumstances not recognized by the federal regulation. We conclude that § 12211 and 4 Cal.Admin.Code ch. 8, subch. 2, do permit the sale of packages of flour that do not comply with federal law.

There is an additional reason, of equal vitality with the above, for holding § 12211 and 4 Cal.Admin.Code ch. 8, subch. 2, preempted by federal law. As the Court said in *Florida Lime & Avocado Growers, Inc. v. Paul, supra,* 373 U.S. at 142–43, 83 S.Ct. at 1217,

> A holding of federal exclusion of state law is inescapable and requires no inquiry into congressional design where compliance with both federal and state regulations is a physical impossibility for one engaged in interstate commerce, * * * [citations omitted].

The record shows that California is a state of climatic extremes, with very dry as well as very wet areas inhabited by people who presumably consume flour. In order to comply at the retail level with the California standards, which do not recognize the variations of 21 CFR 1.8b(q), the millers would have to overpack bags intended for dry (less than 60% relative humidity) areas and underpack bags intended for wet areas in order to take into account the variations in bag weight caused by gain or loss of moisture. Such practice would, however, violate federal law, which requires accurate weight at the time of packaging, with reasonable variations caused by gain or loss of moisture being recognized only during the course of subsequent distribution. As a result of this conflict, the California scheme cannot stand.

■ Section 12607, standing as it does with the other provisions in its chapter of the Code with which it must be construed, presents a different situation. Section 12607 is not an average weight provision like § 12211. Through the permission in § 12614, *supra,* of variations of actual weight from label weight

whose causes are not recognized by 21 CFR 1.8b(q), § 12607 is less stringent than the FDCA, and thus the FPLA as well. For instance, weight loss caused by leakage of contents, permitted by § 12607 through § 12614, will result in actual weight being less than the "accurate" weight required by the FPLA on the label, without compliance with the FDCA. Section 12607 is saved from conflict with federal law, however, by § 12613, *supra,* which substitutes the federal standard, as we have here explained it, for any less stringent California standard. In this situation, California must be deemed to have adopted the federal standard as its state standard, which it may do in the exercise of its police power, and § 12607, read in context, does not conflict with federal law and is not invalid.

Jones' *enforcement* of § 12607, however, brings into play our discussion of § 12211 and 4 Cal.Admin.Code ch. 8, subch. 2, *supra.* We agree with the district court that the enforcement of § 12211 and the regulation must be enjoined. The district court found that Jones implemented § 12607 through the same regulation. Although § 12607 alone is a valid exercise of California's police power, its enforcement through the regulation is not, for the reasons given *supra.*

We hold that the district court correctly enjoined the enforcement of, and declared invalid, § 12211 of the Business and Professions Code and 4 Cal.Admin. Code ch. 8, subch. 2. The district court should not have declared § 12607 of the Business and Professions Code invalid, but correctly enjoined the enforcement of § 12607 through the procedures described in 4 Cal.Admin.Code ch. 8, subch. 2.

We have attempted to make it clear that by this decision we do not deprive California of its unquestioned right to exercise its police power in the regulation of weights and measures so as to prevent the sale to consumer of packaged flour and other foods which do not weigh what their labels say they do. We

find merely that certain statutes and regulations enacted by California in exercise of its police power conflict with federal law in such a manner that they are superseded by federal law. California is free to enact other statutes and regulations that do not suffer from this infirmity. Where proper state standards exist, Jones and other county directors of weights and measures may employ state procedures, including off-sale orders, to enforce the state law.[5]

## IV

After the entry of the district court order, California promulgated a new regulation, 4 Cal.Admin.Code ch. 8, subch. 2.1, to

> * * * apply only during proceedings in the case of *General Mills, Inc., et al. v. Joseph W. Jones, etc.,* No. 73–715–R, United States District Court, Central District of California. This Article is adopted as a temporary authority to protect California wholesalers, retailers, and consumers against short weight packages of flour and flour products. Flour products includes cake mixes, pancake mixes and similar products in which flour is the principal ingredient, but does not include processed products such as bread and pastry using flour or flour products as ingredients.

The district court, though asked to do so, refused to modify its order to enjoin the enforcement of subch. 2.1 as well.

This new regulation purports to apply "federal standards of accuracy to the products involved, which standards are coincident with California standards of accuracy." We find it falls short of its announced goal.

 Only one section of the new regulation, § 2970.2(a) need detain us on this point. It provides:

The sealer of weights and measures shall order off sale all packages which are found to be short weight under either procedure stated in Section 2970.1. He shall record on a form specified by the director the shortage determined for each package marked off sale.

We note this section follows the federal standard in considering the weights of individual packages and not just the average weight of a lot. We note also that no reasonable variations from stated weight, as in 21 CFR 1.8b(q), are permitted. However, this regulation permits the sale of overweight packages, and thus is less stringent than the "accurate" weight standard of federal law. Where no variations as stringent or more stringent than those allowed under the FDCA are provided for, California may not restrict the sale only of underweight packages, while letting overweight packages, which the FPLA deems improperly labeled, remain on sale. Furthermore, simultaneous compliance with federal law and subch. 2.1 is made physically impossible by California's failure to recognize reasonable variations from label weight as permitted by 21 CFR 1.8b(q). We hold that California may not enforce its weights and measures laws through the procedures of 4 Cal.Admin.Code ch. 8, subch. 2.1.[6]

## V

## CONCLUSION

In recapitulation, we hold:

(1) that the single judge below properly refused to convene a three-judge district court to hear and decide this case, since the constitutional issues raised in this case are not substantial;

(2) that the enforcement of valid state weights and measures laws

---

5. The millers have not contended that the FDCA, FPLA, and state standards enforceable thereunder cannot be enforced at the retail level. Cf. Part IV of our *Rath* opinion. The off-sale order scheme used in California can, as we held in Part I of this opinion, *supra,* be used constitutionally to enforce a valid California weights and measures regulation program.

6. This holding and our holding in Part III, *supra,* render it unnecessary to decide the millers' claims that 4 Cal.Admin.Code ch. 8, subchs. 2 and 2.1 were not promulgated in accordance with California law.

through the use of off-sale orders prior to a hearing or opportunity for judicial review does not unreasonably burden interstate commerce or violate the due process clause of the Fourteenth Amendment to the Constitution of the United States;

(3) that the district court erred in invalidating 21 CFR 1.8b(q);

(4) That Cal.Bus. and Prof.Code § 12211 and 4 Cal.Admin.Code ch. 8, subch. 2, impermissibly conflict with the standards imposed by the Food, Drug, and Cosmetic Act, the Fair Packaging and Labeling Act, and 21 CFR 1.8b(q), and that Jones was properly enjoined from enforcing those sections;

(5) that the district court erred in invalidating Cal.Bus. and Prof.Code § 12607 but correctly enjoined its enforcement through 4 Cal.Admin.Code ch. 8, subch. 2; and

(6) that 4 Cal.Admin.Code ch. 8, subch. 2.1, impermissibly conflicts with the standards imposed by the Food, Drug, and Cosmetic Act, the Fair Packaging and Labeling Act, and 21 CFR 1.8b(q), and may not be used as the basis for procedures enforcing California law.

Accordingly, the judgment of the district court is affirmed in part, reversed in part, and the case is remanded for entry of an amended order in conformance with this opinion.

## APPENDIX

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| General Mills, Inc., a corporation; The Pillsbury Company, a corporation; Seaboard Allied Milling Corporation, a corporation, *Plaintiffs and Counterdefendants,* <br><br> v. <br><br> Joseph W. Jones as Director of the County of Riverside Department of Weights and Measures, *Defendant and Counterclaimant.* | CIVIL ACTION No. 73–715–R <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiffs and defendants by cross motion for summary judgment invite the Court to revisit its decision in *Rath Packing Company v. Becker et al.,* 357 F.Supp. 529 [C.D.Cal.1973], advocating reversal or modification of views expressed therein.

Factually, this case is indistinguishable from *Rath, supra,* except that wheat flour is the commodity involved instead of meat, thereby substituting the application of the Federal Food, Drug, and Cosmetic Act, 52 Stat. 1040, 21 U.S.C. § 301 et seq. in place of the federal Wholesome Meat Act of 1967, 21 U.S.C. § 601 et seq.

Defendant, JOSEPH W. JONES, the Director of County of Riverside, Department of Weights and Measures, has, in the performance of his duties, through inspectors employed in his department, ordered off-sale wheat flour products of each of the plaintiffs pursuant to the provisions of California Business and Professions Code, sections 12211 and 12607, as implemented by Title 4, California Administrative Code, Chapter 8, subchapter 2.

Defendant continues to apply the state requirements held invalid in *Rath, supra.* The suggestion in *Rath, supra,* that state officers "have available to them a feder-

al statutory scheme which, when properly executed by state . . . officers, secures to the American homemaker the assurance that expected wholesomeness and value is received for each consumer dollar spent," at 535, is misread by defendant when he insists on using *state standards as the measure* for determining misbranding or mislabeling. Federal standards preempt state law. Off-sale orders and other state procedures are available to state officers, but only to assure compliance with those requirements of federal law provided in the Federal Food, Drug, and Cosmetic Act and federal Fair Packaging and Labeling Act as they may be applied to plaintiff's products. The enactment of these same *federal* standards as state law is another alternative available for the protection of California consumers.

Plaintiffs' position here is no different than the plaintiff in *Rath, supra.* Here 21 C.F.R., Section 1.8(b)(q) suffers from the same infirmity as did 9 C.F.R., Section 1.8(b)(q) suffers from the same infirmity as did 9 C.F.R. 317.2(h)(2) in the *Rath, supra,* case. The Secretary has failed to express tolerances which may be the "reasonable variations" of the regulation. Without such an expression—from the Secretary—each enforcement officer is left to his own personal standard of what is reasonable. So long as the Secretary does not act to correct this inadequacy in the regulations, enforcement officers are left with the absolute standard of the statute that each package must contain as part of its label "an accurate statement of the quantity of the contents in terms of weight, measure, or numerical count".

The state standard applied by defendant does not meet the measure.

No constitutional question is presented by plaintiffs which require [sic] resolution by a three-judge court.

Accordingly,

It is ordered:

1. That defendant, together with his deputies, inspectors, officers, agents, servants, employees, attorneys and other persons in active concert or participation with him are jointly and severally restrained and enjoined from applying the provisions of California Business and Professions Code, sections 12211 and 12607, and/or the provisions of Title 4, California Administrative Code, Chapter 8, subchapter 2, to the products of plaintiffs, which have been subjected to the provisions of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq., and/or the federal Fair Packaging and Labeling Act and any valid regulation promulgated pursuant thereto.

2. The Court reserves the continuing jurisdiction to make any modification to the injunction contained herein upon proper application by any party, as the ends of justice may require.

3. The motion for a three-judge court is denied.

4. The motion of defendant for summary judgment is denied.

5. Except as herein expressly provided, the motion for summary judgment of plaintiffs is denied.

Dated: September 17, 1973.

/s/ Manuel L. Real

United States District Judge